UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                              Case No. 08-19642-BKC-JKO

    PETER D. LETTERESE,                        Chapter 7

    Debtor.

_____/

CHURCH OF SCIENTOLOGY
INTERNATIONAL, and
BRIDGE PUBLICATIONS, INC.,              Adversary Case No. _____

    Plaintiffs,

v.

PETER D. LETTERESE,

    Defendant.

_____/

**COMPLAINT TO DETERMINE DISCHARGEABILITY PURSUANT TO
11 U.S.C. §§523(a)(4) AND (6), AND OBJECTING TO DISCHARGE
PURSUANT TO 11 U.S.C. §§ 727(a)(4) AND (7)**

CHURCH OF SCIENTOLOGY INTERNATIONAL, ("CSI"), and BRIDGE PUBLICATIONS, INC. ("BPI") (collectively "Plaintiffs"), by and through their counsel, hereby sue the Debtor and Defendant herein, PETER D. LETTERESE ("LETTERESE" or "Debtor" or "Defendant"), and state as follows:

**JURISDICTION AND PARTIES**

1.    This is an adversary proceeding brought by Plaintiffs, CSI and BPI, each interested parties of the Defendant/Debtor, Letterese's Chapter 7 bankruptcy estate, to determine the non-dischargeability of debts under 11 U.S.C. §§ 523(a)(4) and (6), and/or to object to the

Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(4) and (7) of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and § 157(b)(1).

3.      This is a core proceeding for which the Court is authorized to hear and determine all matters in accordance with 28 U.S.C. §§ 157 (b)(2)(A), (I), and (J).  Pursuant to Bankruptcy Rule 7008(a), and to the extent that any issues in this adversary proceeding are determined by the Court to be "non-core," Plaintiffs hereby consent to the entry of final orders and judgment by the Bankruptcy Judge.

4.      The Plaintiff, CSI, is a corporation duly organized and existing under the laws of the State of California with its principal location in California, and is otherwise *sui juris*.

5.      The Plaintiff, BPI, is a corporation duly organized and existing under the laws of the State of California with its principal location in California, and is otherwise *sui juris*.

6.      The Defendant, Letterese, is a resident of Broward County, Florida, and is otherwise *sui juris*.

7.      Based upon the filing of Debtor's Chapter 7 Petition[1]/ in this Court, venue is proper under 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

8.      On or about July 12, 2008 ("Petition Date") Debtor Letterese filed his Voluntary Petition for Relief under Chapter 13 of the United States Bankruptcy Code (the "Petition"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Case").

---

[1]/ As will be discussed herein, Debtor initially filed for Chapter 13; however upon motion by various creditors, including CSI and BPI, the Court converted the case to a Chapter 7 proceeding in part because of the bad faith of the Debtor.

9.      On July 12, 2008, the Debtor filed his Schedules, Statement of Financial Affairs, and his Chapter 13 Plan, which were all signed under penalty of perjury. [See D.E. #1]. In Schedule I, the Debtor claimed to earn gross income of $15,100. [See D.E. #1]. This was later determined to be false.

10.     Interestingly, in the Debtor's Statement of Financial Affairs, he claimed to have zero income for the last three (3) years, including none as of the date of filing in 2008. [See D.E. #1]. In Schedule J, Debtor claimed to have $11,125.00 in monthly expenses, yet no source of income.

11.     The Debtor also claimed to have filed his 2007 Form 1040 taxes between August 16 and 18, 2008. [See D.E. #40]. However, at a hearing held on September 23, 2008, the Debtor provided no evidence to support this allegation. Instead, the only evidence provided was a self-authenticating "Certificate of Lack of Record" from the IRS certifying that Debtor had not filed any Form 1040 income tax return for 2007, or even sought or received an extension to file as of September 19, 2008. [See D.E. #42 and #46].

12.     The first §341 Meeting of Creditors ("Meeting") was scheduled to be held on August 21, 2008 at 2:30 p.m.

13.     Debtor failed to appear at this first scheduled §341 Meeting.

14.     A few days before the scheduled 341 Meeting, on August 18, 2008, Debtor filed his Notice of Voluntary Dismissal in an attempt to dismiss his bankruptcy proceeding. [See D.E. #16].

15.     In response, on August 20, 2008, Plaintiffs CSI and BPI filed their Motion to Convert Case to Chapter 7 ("Motion to Convert") [D.E. #17], which was subsequently joined in by judgment creditors Drs. Douglas Ness, Scott Brody, and Marc Schwartz. [D.E. #39].

16.     On September 15 and 23, 2008 oral arguments regarding a final evidentiary hearing were conducted on the competing Motions.  On December 2, 2008, the Court entered its Order Denying Voluntary Dismissal and Granting Plaintiffs' Motion to Convert Case to Chapter 7 ("Conversion Order") upon concluding that the Debtor acted in bad faith in part due to the "litany of other misrepresentations and lack of financial transparency." [D.E. #63]

17.     In the Conversion Order, the Court further explained that the Debtor presented his Chapter 13 Plan in bad faith, and as an example stated that "[t]he expenses listed are enormous and appear to be completely disconnected from the Debtor's income which was reported as zero for 2006, 2007, and 2008." [See D.E. #63 at p. 10].

18.     The Court also noted in the Conversion Order that the Debtor failed to meet the requirements of having "regular income" given that he stated he had no income for the last three years. [See D.E. #63 at p. 9].  The Court also observed that that Debtor miscategorized most of his debts as contingent and unliquidated when in fact the claims were noncontingent and liquidated and also substantially in excess of the debt limitations set forth under §109(e). [See D.E. #63 at pp. 7-8].

19.     The Conversion Order concluded that the Debtor failed to accurately disclose his monthly income and expenses, upon determining that Debtor did not have any "regular income" as previously disclosed, and that Debtor's expenses exceeded the allowable amount under §109(e). [See D.E. #63 at pp. 9-10].

20.     Subsequent to the Conversion Order, on December 17, 2008, Debtor filed his amended Schedule I, now purporting to show the Debtor making zero monthly income. [D.E. #74].

21.    Upon conversion of the bankruptcy proceeding to a Chapter 7, Leslie Osborne ("Osborne") was appointed the Chapter 7 Trustee and the §341 Meeting was re-scheduled for January 5, 2009 at 4:00 p.m.

22.    Debtor for a second time failed to attend the §341 Meeting, and Osborne rescheduled the §341 Meeting for the second time.

23.    On January 28, 2009, Osborne finally conducted the §341 Meeting. At this §341 Meeting, undersigned counsel questioned Debtor on various aspects of his bankruptcy Schedules and Statement of Financial Affairs.  [See D.E. #114].

24.    Debtor's response at the §341 Meeting revealed that Debtor omitted and/or failed to truthfully and accurately respond to various questions on Schedule B – Personal Property, and Schedule I – Current Income, including but not limited to the following:

- the Debtor failed to list and accurately value his jewelry; and

- the Debtor failed to disclose his interest and source of income, which Debtor alleged he acquired through his Power of Attorney regarding a copyright License owned by Creative Desperations Inc., a/k/a Peter Letterese & Associates Inc. ("CDI").

25.    Then on June 30, 2009, Debtor filed a sworn statement in support of a Reaffirmation Agreement with Ford Motor Company to reaffirm a debt on a vehicle.  [D.E. #166].

26.    Despite reporting zero income in his amended Schedule I, as discussed above, in support of the Reaffirmation Agreement Debtor purports to validate the reaffirmed debt by now alleging that his current monthly income is $12,000.00 and that his current monthly expenses are $7,000.00. [See D.E. #166].

27.    As a result, this statement is in direct contradiction to the position Debtor has maintained throughout his bankruptcy proceeding, as reflected by the most recent amended Schedule J, and furthermore, is not supported by any submissions made in Debtor's other Schedules or Statement of Financial Affairs.

28.    Debtor, as the principal officer of CDI, was also involved in filing a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on behalf of CDI.

29.    In the CDI Chapter 11 proceeding, the Debtor is alleged to have fraudulently transferred certain assets of the corporation's estate. Specifically, Debtor, acting in the capacity of CDI's principal officer, purports to have verbally transferred all of CDI's intellectual property rights, claims and interests, together with the enforcement of such rights under federal and/or state law in the Les Dane Book back in January 2006.[2]/ Yet, even after this date, the CDI Debtor, through Letterese, continued to file several claims in District Court suing for, among other things, infringement of the very copyright which Letterese purports to have verbally transferred in January of 2006 to MGSI, Inc. ("MGSI").

30.    Moreover, on November 5, 2008, subsequent to the Petition Date of CDI, the Debtor, as Shareholder of CDI, caused the filing of that certain Notice of Filing of Restatement Memorandum of Terms of January 2006 Assignment ("Copyright Assignment") [See CDI Bankr, D.E. #150] alleging the transfer of all of CDI's intellectual property rights to writings by author Les Dane ("Les Dane Book") more than two years prior. Significantly, the purported post-petition Copyright Assignment attempts to commemorate the terms of the alleged pre-

---

[2]/ CDI acquired the exclusive rights to Les Dane's literary works through a written contract with the heirs of the Dane estate, including Les Dane's widow, Lois Dane, signed on December 31, 1993. CDI also acquired the outstanding publishing rights to the Les Dane Book pursuant to an Assignment of Copyright dated July 12, 1994 from Prentice Hall, as successor to Parker Publishing.

petition prior oral transfer of the intellectual property rights to the Les Dane Book from CDI to MGSI.

31.     Upon information and belief, the Debtor controls MGSI directly and is a beneficial or indirect owner.

32.     However, throughout the Debtor's Chapter 13 bankruptcy proceeding, as well as CDI's Chapter 11 proceeding, Debtor maintained that MGSI was simply a creditor friendly to the Debtor and was funding the litigation for no consideration.

33.     Further, the Debtor, even after CDI stopped conducting business, authorized CDI to commence multiple unsupported claims that resulted in damages to CSI and BPI, the amount of which has not yet been determined.  Claims have been asserted in this case, for which the Debtor is liable based on fraud, alter ego and/or piercing the corporate veil regarding CDI.

## COUNT I – EXCEPTION TO DISCHARGE OF DEBTS
## PURSUANT TO 11 U.S.C. § 523(a)(4)

34.     The Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 33, as if fully set forth herein.

35.     Pursuant to 11 U.S.C. § 523(a)(4), an individual debtor is not discharged from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

36.     Debtor committed embezzlement while acting as the principal officer of CDI, which filed a voluntary petition under Chapter 11 of the Bankruptcy Code in Case Number 08-19067-JKO,[3]/ by fraudulently misappropriating certain assets out of CDI's estate and transferring them to MGSI, another corporation owned and/or operated by Debtor.  Specifically, Debtor as an officer and director of CDI, fraudulently embezzled property of CDI by the purported pre-petition oral transfer of all of CDI's intellectual property rights, claims and interests in the Les

---

[3]/ This case has since been converted to a Chapter 7 proceeding.

Dane Book to MGSI in order to avoid having said property used to pay off CDI's creditors, including the judgments obtained against CDI by Plaintiffs.

37.    The Debtor further committed embezzlement via the post-petition Copyright Assignment on November 5, 2008, which purported to memorialize the terms of a prior oral agreement whereby CDI, through the Debtor as its principal officer, allegedly assigned all of its intellectual property rights to the Les Dane Book to MGSI in 2006.  [CDI Bankr. D.E. #150].

38.    Based on Debtor's fraudulent conduct in transferring assets of CDI out of the estate and into another company owned by Debtor, CDI was unable to effect a plan of reorganization and was forced into converting the case to a Chapter 7 proceeding.  As a result, Plaintiffs were unable to collect on the judgments obtained against CDI since there were no significant assets left in CDI's estate.

39.    As a direct and proximate result of Defendant's wrongful conduct as described herein, Plaintiffs have and continue to suffer damages for which the Debtor's discharge as to the debt set forth in its proof of claims should be denied pursuant to § 523(a)(4) of the Bankruptcy Code.

WHEREFORE, Plaintiffs respectfully request that this Court determine that the debt owed to Plaintiffs is non-dischargeable against Defendant pursuant to 11 U.S.C. § 523(a)(4), together with such other relief as this Court deems just and proper.

## COUNT II - EXCEPTION TO DISCHARGE OF DEBTS
## PURSUANT TO 11 U.S.C. § 523(a)(6)

40.    The Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 33, as if fully set forth herein.

41.     Pursuant to 11 U.S.C. § 523(a)(6), an individual debtor is not discharged from any debt for willful and malicious injury by the debtor to another entity or to property of another entity, such as the Plaintiffs.

42.     The Debtor willfully and maliciously injured the rights of Plaintiffs by intentionally assigning all of CDI's assets, including its rights to the Dane Agreement relating to various copyrighted materials, to MGSI in January of 2006 or under the illegal post-petition Copyright Assignment with CDI.  Such conduct not only precluded a recovery of certain judgments, but also required Plaintiffs to litigate certain issues which never should have existed. The conduct also has precluded the CDI Trustee from marketing such rights as an asset, thereby frustrating any recovery to Plaintiffs.

43.     Such acts were done willfully and maliciously by the Debtor (individually and as the control person of CDI), with the intent and/or knowledge that a substantial certainty existed that such conduct would cause financial injury to Plaintiffs without just cause.

44.     As a direct and proximate result of Defendant's willful and malicious conduct as described herein, Plaintiffs have and continue to suffer damages, including those as a result of having to defend the frivolous claims filed by Debtor and CDI (controlled by Letterese), for which the Debtor's discharge as to the debt owed to Plaintiffs should be denied pursuant to § 523(a)(6) of the Bankruptcy Code.

WHEREFORE, Plaintiffs respectfully request that this Court determine that the debt owed to Plaintiffs is non-dischargeable against Defendant pursuant to 11 U.S.C. § 523(a)(6), together with such other relief as this Court deems just and proper.

## COUNT III – DENIAL OF DISCHARGE OF DEBTS
## PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

45.     The Plaintiffs sue the Debtor to deny his discharge pursuant to 11 U.S.C. § 727(a)(4) and incorporate the allegations contained in paragraphs 1 through 33, as if fully set forth herein.

46.     Pursuant to 11 U.S.C. § 727(a)(4)(A) and (B), the Debtor is not discharged from any debt if the Debtor knowingly and fraudulently made a false oath or account in connection with his case or presented a false claim.

47.     The Debtor's Schedules and Statement of Financial Affairs contain various omissions and false oaths, including but not limited to, the Debtor's failure to list and accurately value his jewelry; his interest in the Les Dane literary works, including the Les Dane Power of Attorney from which he derives a significant source of income; and his inconsistent submissions regarding his source and the amount of monthly income and expenses.

48.     Further, the Debtor commenced numerous false claims against parties, such as Judge Olson and attorney Perlman.

WHEREFORE, based upon the foregoing, the Plaintiffs request that the Debtor's discharge be denied under 11 U.S.C. § 727(a)(4)(A) on the basis that the Debtor made false oaths by failing to make full disclosure of his assets and financial affairs and his pattern of omissions and false statements in this case warrant the conclusion that the statements and omissions were made with the requisite fraudulent intent required to deny his discharge, together with such other relief as this Court deems just and proper.

## COUNT IV – DENIAL OF DISCHARGE OF DEBTS
## PURSUANT TO 11 U.S.C. § 727(a)(7)

49.     The Plaintiffs sue the Debtor to deny his discharge pursuant to 11 U.S.C. §
727(a)(7) and incorporate the allegations contained in paragraphs 1 through 33, as if fully set
forth herein.

50.     Pursuant to 11 U.S.C. § 727(a)(7), the Debtor is not discharged from any debt if
the Debtor has committed any act specified in subsections (a)(2), (3), (4), (5), or (6), on or before
one year before the date of filing of the petition, or during the case, in connection with another
case, concerning an insider.

51.     The Debtor made false oaths in the CDI Proceeding, by failing to list the Dane
License in that estate. The Debtor made a false claim in the CDI Proceeding by asserting certain
litigation on its behalf with no factual basis, such as naming Judge Olson and attorney Perlman
in the RICO case post-petition. The foregoing conduct is in violation of 11 U.S.C. § 727(a)(7),
via (a)(4)(A) and (B).

52.     With respect to the Debtor's corporation, CDI, the Debtor, as the principal officer
of CDI, with the intent to hinder or defraud the creditors in that case, has fraudulently transferred
property of CDI or its estate, after the date of filing the Chapter 11 petition. Thus, under 11
U.S.C. § 727(a)(7), via (a)(2)(B), by operation of the Copyright Assignment, the Debtor is not
entitled to a discharge.

53.     Specifically, in the CDI bankruptcy case, five months after filing its Chapter 11
petition, on November 5, 2008, the Debtor filed a Copyright Assignment, purporting to restate
the terms of the agreement whereby CDI, through the Debtor, as its principal officer, allegedly
assigned all of its rights to the Dane Agreement relating to various copyrighted materials, to
MGSI. [CDI Bankr. D.E. #150].

54.     The Plaintiffs contend that the Copyright Assignment was never effectuated and that Debtor, through CDI, continues to have rights to the Dane Agreement and the copyright materials under the agreement, and that Debtor is using the Bankruptcy Courts to conceal its ownership interests in these copyrights in order to keep them out of the estate and out of the hands of the creditors.

WHEREFORE, based upon the foregoing, the Plaintiffs, CSI and BPI, request that this Court determine that the Debtor's discharge be denied pursuant to 11 U.S.C. § 727(a)(7), together with such other relief as this Court deems just and proper.

Dated this 22nd day of October, 2009.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

**ADORNO & YOSS LLP**
*Attorneys for Plaintiffs and Creditors:*
*Church of Scientology International*
*Bridge Publications, Inc.*

 /s/ Alan J. Perlman
Alan J. Perlman (Fla. Bar No. 826006)
Shirin Movahed (Fla. Bar No. 31546)
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL  33301
(954) 763-1200 (Telephone)
(954) 766-7800 (Facsimile)
aperlman@adorno.com
smovahed@adorno.com